## LELAND v. UNITED STATES.
### No. 5473.

Circuit Court of Appeals, Fourth Circuit.
May 14, 1946.

Edward K. Pritchard and Malcolm E. Crosland, both of Charleston, S. C. (Thomas P. Stoney, of Charleston, S. C. on the brief), for appellant.

Ben Scott Whaley, Asst. U. S. Atty., of Charleston, S. C. (Claud N. Sapp, U. S. Atty., of Columbia, S. C., and Louis M. Shimel, Asst. U. S. Atty., of Charleston, S. C., on the brief), for appellee.

Before GRONER, Chief Justice of U. S. Court of Appeals for District of Columbia, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This is an appeal by Horace Girardeau Leland, hereinafter referred to as defendant, from his conviction, along with seven other defendants, under an indictment charging conspiracy to violate certain sections of the Internal Revenue Code dealing with the manufacture of distilled spirits. 26 U.S.C.A. Int.Rev.Code, § 2800 et seq. Some of the other defendants were also charged with substantive offenses at the same trial, but only the conspiracy indictment was lodged against Leland. Although no motion was made for a directed verdict at the conclusion of the testimony, motion for a new trial as to Leland was made in due time upon three grounds: (1) that the jury's verdict was not in accord with the evidence; (2) that there was not sufficient substantial evidence introduced which excluded other hypotheses save that of guilt; and (3) that a newspaper article offered in evidence, but ruled out by the judge, had nevertheless been given to the jury along with the exhibits for their consideration in the jury room. Upon denial of the motion, this appeal was taken.

At the trial, the testimony was protracted and not without contradictions. The tes-

timony with respect to the guilt of this defendant came almost exclusively from two confessed violators of the internal revenue laws concerning distilled spirits. Specifically, the acts to which these witnesses testified included the following:

Welch testified to the joint operation of a still with Leland and Hood (another of the defendants tried under the same indictment) in 1940 and 1941. He reported going with Hood to Leland's house on several occasions to give warning of his suspicion that their still had been located by revenue agents, and Hood and Leland's departure to investigate this. When the still was hauled away by hijackers, the same three gave chase and recovered the stolen equipment. And when operations were resumed after a lapse of about five months, it was with Leland that Welch arranged for the hauling away of the whiskey as it was manufactured.

Hataway, the second witness for the government, testified that he had been in the liquor business with Hood for a considerable period and that during a year or more of this period, they had paid Leland one dollar a barrel for "protection". He stated that he (Hataway) had paid Leland between three and four hundred dollars for this purpose. Later, when Hataway had his own still but had suspended operations for lack of sugar, Leland offered to get him sugar. Leland did supply two sacks of sugar and took a split of the profits in return.

Much of this testimony was contradicted by witnesses alleged to have knowledge of the same events, while other details of the evidence seem definitely self-contradictory. To counterbalance this, the defendant offered substantial testimony of his own good character and reputation.

The proposition is well established that conflicts in evidence dependent upon the credibility of witnesses are resolved by the verdict of the jury and that its decision is not within the scope of appellate review. If there is substantial evidence to support the jury's finding, that finding will be sustained even though it may appear from the record that a different evaluation of the relative credibility of witnesses might have been appropriate. There is good reason for this. Not only is our judicial system based upon the function of the jury as the trier of *facts*, but the members of the jury have a special advantage in that they hear and see the witnesses, whereas an appellate court must draw its conclusions solely from the cold record.

Hence, the first basis for defendant's appeal must be rejected, since it is conceded that there was testimony in the record sufficient to support a conspiracy charge, if the jury believed it. Admittedly, much of this testimony was inconclusive and weak upon logical analysis, but its credibility is not before us.

With respect to the newspaper clipping which was inadvertently given to the jury along with the exhibits, we likewise do not find reversible error. The clipping in question was a brief account of the seizure of a still by a raiding party including the defendant (who was a county policeman) and was originally offered by the prosecution in order to establish a date. There is conflict between the reporter's transcript and the clerk's minutes with respect to the offer. The clerk's minutes show the clipping as admitted and later ruled out, whereas the transcript indicates that it was excluded when offered. In any event, the judge's ruling that he saw no pertinency in the clipping was made in the presence of the jury.

The complete text of the clipping consisted of only two sentences and a headline. It read as follows:

"STILL SEIZED NEAR McCLELLANVILLE

In a raid near McClellanville by County Policeman H. G. Leland and J. C. Hood, town marshall at McClellanville, a 100-gallon metal still, 500 gallons of mash and eight jars containing moonshine whiskey were seized and destroyed yesterday, reported County Chief of Police Daniel S. Mott.

No one was at the plant at the time."

At first reading, this report of a police officer performing his duty would appear definitely favorable to the defendant, rather than damaging. But the introduc-

tion of the clipping was opposed by defendant's counsel as prejudicial because the newspaper report that this still had been *destroyed* was contradicted by other clear testimony that Leland, instead of actually destroying the still itself, had hauled it home to cut up in order to salvage the copper, for use in repairing his boat. From his garage where the still was stored while he cut it apart, it apparently was stolen and not long afterwards was located by federal agents in use in another location. Under these circumstances, Leland contends that the newspaper article impeached his veracity and prejudiced him greatly in the trial, since so much depended on the relative credibility of various witnesses. However, any such prejudice must be evaluated in the light of other testimony (which was admitted without protest) of Leland's statement to federal agents that he had destroyed this still.

At the hearing upon the motion for a new trial, the judge gave careful consideration to this question of the clipping, but concluded that the article had no probative value and was mere surplusage. He further noted that the information contained was thereafter testified to in substance by the defendant himself. Under these circumstances, he concluded that no necessity existed for a new trial.

■ This Court has frequently held that action upon a motion for a new trial rested within the sound discretion of the trial judge and would be reviewed by us only where clear abuse of discretion was manifest. Massenburg v. United States, 4 Cir., 19 F.2d 62, 64. We find no such abuse here. As noted above, the contents of the clipping contained nothing not testified to by others and the judge had ruled it out as having no pertinency, in the jury's presence. There is nothing in the record to suggest that any member of the jury even discovered its existence among the exhibits, or gave it any attention or value.

Under all these circumstances, we are unable to say that the denial of the motion for a new trial as to this defendant was improper. The appeal to this Court is based upon these same grounds. We find

in them no basis for a reversal of the judgment below and it is accordingly affirmed.

Affirmed.